IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-01001-WYD-MEH

MALIBU MEDIA, LLC,

    Plaintiff,

v.

DAVID KORNMEYER,

    Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

Plaintiff has filed a Motion for Entry of Default Judgment against David Kornmeyer [filed September 24, 2013; docket #24]. Pursuant to 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1.C, the motion was referred to me for a Report and Recommendation. Based upon the record and for the reasons that follow, the Court recommends that the District Court **grant in part and deny in part** the motion as set forth herein.[1]

---

[1] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).

## BACKGROUND

In this case, Plaintiff's allegations involve a complicated technical process used to download copyrighted works (here, motion pictures) through the BitTorrent program; therefore, this Court finds it necessary first to explain how BitTorrent works, then to note its findings of fact in this case.

**I.   BitTorrent Protocol**

Fortunately, several courts in this country have researched, defined and described the protocol in such a way that even technologically challenged individuals may understand the intricacies of the BitTorrent program. This Court finds particularly instructive and gratefully adopts the description provided by the Honorable Thomas L. Ludington, District Judge for the Eastern District of Michigan, in *Patrick Collins, Inc. v. John Does 1-28*, No. 12-13670, 2013 WL 359759 (E.D. Mich. Jan. 29, 2013), in which Judge Ludington first defines terms used with the protocol, then describes how BitTorrent operates. *Id.* at *1-*3. First, the vocabulary used in the technology:

*Internet Protocol* (IP): The system of communication standards that ensures data packets transmitted over the internet reach their intended destinations.

*IP Address:* The unique identifying number of a device connected to the internet.

*Uniform Resource Locator* (URL): The internet address assigned to a web document or resource by which it can be accessed by all web browsers.

*File:* A collection of related data packets treated as a unit.

*Hash Identifier:* A 40-character alphanumeric string that forms a unique identifier of an encoded file.

*Hypertext Transfer Protocol* (HTTP): A system of communication standards that websites use to communicate with web browsers.

*BitTorrent:* A peer-to-peer file sharing protocol.

*Peer:* A BitTorrent user.

> *Swarm:* A group of peers sharing a particular file (identified by its unique hash identifier). A swarm has two types of peers – "leechers" and "seeds." It bears reiterating: to constitute a swarm, all of the peers must be sharing the same file (identified by its unique hash identifier).
>
> *Initial Seeder:* A BitTorrent user who first takes a particular file (such as a movie), breaks it into pieces, encodes the pieces with hash identifiers, creates a torrent file with the data about that file and its tracker, and makes the complete file available to other BitTorrent users.
>
> *Seed:* A peer who downloaded a complete file and is uploading all of its pieces to other peers in the swarm.
>
> *Leecher:* A peer in the process of downloading the file from the other peers. As soon as a leecher downloads new content (a piece of the file), the leecher begins sharing its content with the other leechers in the swarm.
>
> *Piece*: A one-quarter megabyte size part of a file being shared via BitTorrent (except for the last, smaller piece, which is the size of the remainder of the file).
>
> *Tracker:* A server containing an updated list of peers in the swarm. It allows a peer to learn about other peers sharing a particular torrent and join the swarm.
>
> *Torrent file*: The hub of the BitTorrent system, a *torrent* file is a small file containing the file name, the IP address of the tracker, the number of and size of the pieces, and the hash identifier unique to the pieces of that particular torrent file.

*Patrick Collins, Inc.*, 2013 WL 359759, at *1-*2 (citations omitted). Judge Ludington proceeds to

describe the protocol and how BitTorrent works:

> BitTorrent, as noted, is a peer-to-peer file sharing protocol. More precisely, it is a peer-to-peer model that improves on prior generations of peer-to-peer networks by solving the "free-rider problem wherein a substantial majority of users downloaded but never uploaded content."
>
> . . .
>
> Briefly, here's how BitTorrent works. A file transfer begins "when one user accesses the Internet through an ISP and intentionally makes a digital file of a work available to the public from his or her computer. This file is referred to as the first 'seed.' Other users, who are referred to as 'peers,' then access the Internet and request the file. These users engage each other in a group, referred to as a 'swarm,' and begin downloading the seed file. As each peer receives portions of the seed, that peer

3

makes those portions available to other peers in the swarm."

Elaborating on the process, BitTorrent.org explains that to download a file, a peer performs six steps:

1. Install BitTorrent (or have done so already).
2. Surf the web.
3. Click on a link to a *.torrent* file.
4. Select where to save the file locally, or select a partial download to resume.
5. Wait for download to complete.
6. Tell downloader to exit (it keeps uploading until this happens).

BitTorrent's key, as noted, is reciprocity – a peer not only downloads but automatically uploads pieces to other peers. "To keep the torrent operating at maximum capacity, the BitTorrent protocol uses a process called pipelining. Every active peer in a torrent maintains a continuously refreshed queue of requests for pieces, so that no connection is ever left idle after any one piece is downloaded."

"In addition, the protocol has an internal mechanism that makes sure that those peers who are offering little or nothing to the torrent will get little or nothing from it."

In sum, BitTorrent is a reciprocal, decentralized network – and a tough nut to crack for copyright holders:

Data is not stored on a central server. Rather, a user downloads the file in discrete segments from many different users who send data directly to one another. While trackers coordinate and assist peers in locating a swarm, the tracker itself sends out very little data. This makes BitTorrent an extremely efficient mechanism for transferring large files and at the same time, it insulates the protocol itself from anti-piracy efforts because there are no central servers to enjoin from unlawfully distributing copyrighted content. Thus, when copyrighted data is transmitted via BitTorrent, the copyright holder is largely limited to holding the individual file sharers liable for infringement.

*Id.* at *2-*3 (citations omitted).

**II.     Findings of Fact**

1.      Defendant David Kornmeyer is an individual who resided at 2955 Vallejo St., Apt. 21, Denver, Colorado 80211during the relevant time period. Kornmeyer was served with a summons and the Amended Complaint in this action on July 24, 2013. Affidavit of Service, docket #17.

2.      Plaintiff's investigator, IPP Limited, established a direct connection with IP address 67.177.214.71, which has been identified by the applicable Internet Service Provider (ISP) as belonging to Defendant Kornmeyer. Declaration of Tobias Fieser, April 12, 2013 ("Tobias Declaration"), docket #9-2.

3.      IPP Limited downloaded from Kornmeyer one or more bits of each of the digital movie files identified by file hashes as follows:

| Hit Date UTC | File Hash | Title |
| --- | --- | --- |
| 03/30/2013 | BB2965A6E2F60AE85AD9B43ECF1DBE1EDF5EFD38 | Black Lingerie Bliss |
| 03/18/2013 | 34192FC9E62DE20D9616539100FC53D593D3D447 | Circles of Bliss |
| 03/15/2013 | 7E07FA3FCAC0535233D05C401160BA57E7E3C744 | Come To My Window |
| 03/03/2013 | 80B15AB4C27186BF599940820D080538EED04185 | Mad Passion |
| 02/19/2013 | 5FAB4E102E5394CEC2AEE88C2B7329E950C9D845 | Apartment in Madrid |
| 02/06/2013 | 728CAE61541054A512F692033D7A5325A6C3DCBC | Deep Longing |
| 01/08/2013 | D207C259A414746637AE13BA4FA77BBE6F71356D | Sweetest Dreams |
| 12/22//2012 | 30C0C6AAAD4E38ACC2D09FB86F9E427C02504471 | Finding Elysium |
| 12/12/2012 | F9F19C1C00F1F750FAB162F96CC6DBF64CD02C16 | Unforgettable View #1 |
| 12/07/2012 | 60C56F74BB3073EEB84341C04E24BDE7B978660A | Waterfall Emotions |
| 12/02/2012 | 462EBE286EBA279F4A5FB9C569CCDFC4AEBCB27C | Inside Perfection |
| 11/28/2012 | 3B288C5CA8C5A092D1CD5F2FFAB2E526065E255A | Introducing Angelica |
| 11/11/2012 | D417E2BF6D304974B99211AEF43B334C161925B8 | Vacation Fantasy |
| 09/18/2012 | 4594067582DEB2AE66A978C2AE69404584CFDA3E | Underwater Lover |
| 08/16/2012 | AE17747810E6B5F659238133D57DC7A310B6FAF3 | Threes Company |
| 07/31/2012 | C84D25EB1835694659C9DAD5501EC1F013E62977 | Transcendence |
| 07/17/2012 | 8D665D1436F840FCA7F537ABD9C39B55C3801698 | Dream Come True |
| 05/07/2012 | 1D1D6528CA95BD507A9BB9825453B2E9FE334159 | Little Lover |
| 04/12/2012 | 0A8DA11F1850900EB9E62087FAAFF27ADA304282 | Lunchtime Fantasy |
| 04/05/2012 | 629CC69505DFE97D73EAC2A38148A6BD0C1EF2AD | Evening at Home Part #2 |
| 03/29/2012 | 3A7584A1DF61BCE503B9572DC266AB7A838EE4E9 | Perfect Girls |

| Date | Hash | Title |
|---|---|---|
| 03/26/2012 | AC73B71313995E3A054AC5FB5D759DCD7BCAFE51 | Evening at Home |
| 03/13/2012 | EE0A02E5BFA31D3FFB98C4C9C1387756937100B3 | California Dreams |
| 03/10/2012 | CF64181DA508E91AD249098AA25261B2D1ECE9BD | Heavenly Brunettes |
| 03/05/2012 | 0D0665535B7AE4DA392C1BE0875F6D1337EF3934 | Blonde Ambition |
| 01/13/2012 | 35813ECED30B923A57A5336F35BE686E3488F409 | Anneli Leila Menage A Trois |

*Id.*; *see also* Exhibit A to Amended Complaint, docket #13-1.

4.     Each of the cryptographic file hashes as set forth above correlates to copyrighted movies owned by Plaintiff as identified here:

| Title | Registration Number | Date of First Publication | Registration Date |
|---|---|---|---|
| Anneli Leila Menage A Trois | PA0001771662 | 01/13/2012 | 01/17/2012 |
| Apartment in Madrid | PA0001826992 | 02/16/2013 | 02/18/2013 |
| Black Lingerie Bliss | PA0001806468 | 09/19/2012 | 09/19/2012 |
| Blonde Ambition | PA0001779796 | 03/05/2012 | 03/06/2012 |
| California Dreams | PA0001780564 | 03/12/2012 | 03/12/2012 |
| Circles of Bliss | PENDING | 03/20/2013 | 04/01/2013 |
| Come To My Window | PA0001799576 | 07/27/2012 | 07/31/2012 |
| Deep Longing | PA0001825722 | 02/05/2013 | 02/07/2013 |
| Dream Come True | PA0001800356 | 07/13/2012 | 07/20/2012 |
| Evening at Home | PA0001782559 | 03/21/2012 | 03/22/2012 |
| Evening at Home Part #2 | PA0001785204 | 04/04/2012 | 04/04/2012 |
| Finding Elysium | PA0001814784 | 11/15/2012 | 11/19/2012 |
| Heavenly Brunettes | PA0001780766 | 03/07/2012 | 03/14/2012 |
| Inside Perfection | PA0001817756 | 12/02/2012 | 12/16/2012 |
| Introducing Angelica | PA0001818283 | 11/28/2012 | 12/13/2012 |
| Little Lover | PA0001794976 | 04/30/2012 | 05/02/2012 |
| Lunchtime Fantasy | PA0001781702 | 03/19/2012 | 03/19/2012 |
| Mad Passion | PA0001831083 | 02/28/2013 | 03/12/2013 |
| Perfect Girls | PA0001783454 | 03/28/2012 | 03/28/2012 |

| | | | |
|---|---|---|---|
| Sweetest Dreams | PA0001820194 | 01/04/2013 | 01/08/2013 |
| Threes Company | PA0001804939 | 08/17/2012 | 08/15/2012 |
| Transcendence | PA0001799577 | 07/30/2012 | 07/31/2012 |
| Underwater Lover | PA0001806474 | 09/17/2012 | 09/20/2012 |
| Unforgettable View #1 | PA0001817759 | 12/07/2012 | 12/16/2012 |
| Vacation Fantasy | PA0001814250 | 11/10/2012 | 11/28/2012 |
| Waterfall Emotions | PA0001817757 | 12/05/2012 | 12/16/2012 |

Tobias Declaration, docket #9-2; *see also* Exhibit B to Amended Complaint, docket #13-2.

5.     IPP Limited downloaded from Kornmeyer one or more bits of each file, and further downloaded a full copy of each file hash from the BitTorrent file distribution network and confirmed through independent calculation that the file hash matched what is listed above. Tobias Declaration, ¶¶ 17-19, docket #9-2.

6.     IPP Limited then verified that the digital media file correlating to each file hash listed above contained a copy of a movie which is identical (or alternatively, strikingly similar or substantially similar) to the movie associated with that file hash. *Id.* at ¶ 20.

7.     This process indicates that Kornmeyer downloaded and uploaded Plaintiff's copyrighted works without authorization or payment. Amended Complaint, ¶¶ 29-20.

8.     The most recent connection between IPP and Kornmeyer's IP address for each file hash listed above is included within the column labeled Hit Date UTC. UTC refers to Universal Time which is utilized for air traffic control as well as computer forensic purposes. *Id.*, ¶ 21.

9.     IPP Limited also engaged in enhanced surveillance of other digital media files that had been distributed by Kornmeyer. Tobias Declaration, ¶ 21, docket #9-2; *see also* Exhibit C to Amended Complaint, docket #13-3.

10.    As the subscriber in control of the IP address being used to distribute Plaintiff's

copyrighted movies, Kornmeyer is the most likely infringer. Kornmeyer failed to answer or otherwise defend this action; thus, Kornmeyer is the only person who can be identified as the infringer at this time. Amended Complaint, ¶¶ 23-24.

11.     Plaintiff seeks statutory damages for willful infringement and injunctive relief in this case. *Id.* at 6-7.

## PROCEDURAL HISTORY

Plaintiff initiated this action on April 17, 2013. On July 16, 2013, Plaintiff filed an Amended Complaint naming David Kornmeyer as the sole Defendant in this case. Plaintiff served a summons and the Amended Complaint upon Defendant Kornmeyer on July 24, 2013; thus, Kornmeyer's answer or other response was due to be filed on or before August 14, 2013. Docket #17. However, Kornmeyer filed no answer or other response before the deadline; therefore, on August 20, 2013, Plaintiff filed a Motion for Entry of Clerk's Default as to Defendant Kornmeyer. Docket #18. An Entry of Default was docketed by the Clerk of the Court on August 22, 2013. Docket #19. Plaintiff filed the present motion seeking default judgment on September 24, 2013.

The Court is now sufficiently advised and recommends as follows.

## LEGAL STANDARDS

Fed. R. Civ. P. 55 governs motions for default judgment. Rule 55(b)(2) provides the authority for the District Court to enter default judgment. After an entry of default, a defendant cannot defend a claim on the merits. *See Olcott v. Delaware Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003) ("'[D]efendant, by his default, admits the plaintiff's well-pleaded allegations of fact[.]'") (quoting *Jackson v. FIE Corp.*, 302 F.3d 515, 525 (5th Cir. 2002) (finding that "[a]

default judgment is unassailable on the merits.")); *see also Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990) ("[A] default judgment generally precludes a trial of the facts except as to damages.").

Even after entry of default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate basis for the entry of a judgment. *See McCabe v. Campos*, No. 05-cv-00846-RPM, 2008 WL 576245, at *2 (D. Colo. Feb. 28, 2008) (unpublished) (citing *Black v. Lane*, 22 F.3d 1395, 1407 (7th Cir. 1994)). In determining whether a claim for relief has been established, the well-pleaded facts of the complaint relating to liability are deemed true. *Id.* (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)); *see also Personal Indus. Loan Corp. v. Forgay*, 240 F.2d 18, 20 (10th Cir. 1957) ("By failing to appear and permitting a default judgment to be entered, [defendant] admitted only facts well pleaded"). In addition, the court accepts the undisputed facts set forth in any affidavits and exhibits. *Deery American Corp. v. Artco Equip. Sales, Inc.*, No. 06-cv-01684-EWN-CBS, 2007 WL 437762, at *3 (D. Colo. Feb. 6, 2007) (unpublished).

"[A] party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the 'sound judicial discretion' of the court." *Cablevision of Southern Connecticut, Ltd. P'ship v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001) (quoting *Shah v. New York State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999)). A trial court is vested with broad discretion in deciding whether to enter a default judgment. *Grandbouche v. Clancy*, 825 F.2d 1463, 1468 (10th Cir. 1987); *see also Weft, Inc. v. G.C. Inv. Assocs.*, 630 F. Supp. 1138, 1143 (E.D.N.C. 1986) (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)) ("upon a default, a plaintiff is entitled to a determination of liability

unless he has failed to state a legal basis for relief or it is clear from the face of the complaint that the allegations are not susceptible of proof").

## ANALYSIS

Upon review of the record, the Court recommends finding that default judgment be entered in Plaintiff's favor against Defendant Kornmeyer pursuant to Fed. R. Civ. P. 55(b)(2) as follows.

### I. Jurisdiction and Liability

In determining whether entry of default judgment is warranted, the court must first consider personal and subject matter jurisdiction. *See, e.g.*, *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986) (lack of subject matter jurisdiction constitutes good cause to set aside a default judgment); *see also Dennis Garberg & Assoc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997) (district court erred in failing to determine personal jurisdiction issue before considering entry of default judgment). Here, the record reveals that Defendant Kornmeyer resides in Colorado and was served with process at his place of abode, 1661 Washington St., Unit A, Denver, Colorado. *See* docket #17. As such, the Court has personal jurisdiction over Kornmeyer. In addition, this is a copyright infringement case, and the federal courts have original jurisdiction in such cases. *See* 28 U.S.C. § 1338. The Copyright Act creates a cause of action in favor of the owner of a copyright for direct infringement. 17 U.S.C. § 501.

Furthermore, taking its allegations as true, the Plaintiff has established violations of its copyrighted works by Defendant Kornmeyer, in that a computer at Kornmeyer's residence participated in an illegal download of twenty-six (26) of such works. A plaintiff is entitled to a determination of liability unless it has failed to state a legal basis for relief or it is clear from the

face of the complaint that the allegations are not susceptible of proof. *Weft, Inc.*, 630 F. Supp. at 1143.  Here, Plaintiff alleges the following summarized claims:

> In order to distribute a large file, the BitTorrent protocol breaks a file into many small pieces called bits. Users then exchange these small bits amongst each other[.] [Amended Complaint] at ¶ 11.  After the infringer receives all of the bits of a digital media file, the infringer's BitTorrent client software reassembles the bits so that the file may be opened and utilized. *Id*. at ¶ 12.  Plaintiff's investigator, IPP Limited, established a direct TCP/IP connection with the Defendant's IP address as set forth on Exhibit A [of the Amended Complaint]. *Id.* at ¶ 16.  IPP Limited downloaded from Defendant one or more bits of each of the digital movie files identified by the file hashes on Exhibit A. *Id.* at ¶ 17.  Each of the cryptographic file hashes as set forth on Exhibit A correlates to copyrighted movies owned by Plaintiff as identified on Exhibit B. *Id.* at ¶ 18.  IPP Limited [] verified that the digital media file correlating to each file hash listed on Exhibit A contained a copy of a movie which is identical (or alternatively, strikingly similar or substantially similar) to the movie associated with that file hash on Exhibit A. *Id.* at ¶ 19.  By using BitTorrent, Defendant copied and distributed the constituent elements of each of the original works covered by the Copyrights-in-Suit. *Id.* at ¶ 29.  Plaintiff did not authorize, permit or consent to Defendant's distribution of its works. *Id.* at ¶ 30.  As a result of the foregoing, Defendant violated Plaintiff's exclusive [copy]right[s]. *Id.* at ¶ 31.  Defendant's infringements were committed "willfully" within the meaning of 17 U.S.C. § 504(c)(2). *Id.* at ¶ 32.
>
> Defendant formed part of a Bit Torrent "swarm" as follows.  In order to distribute a large file, the BitTorrent protocol breaks a file into many small pieces called bits. Users then exchange these small bits amongst each other[.] Amended Complaint, ¶ 11.  Each bit of a BitTorrent file is assigned a unique cryptographic hash value. *Id.* at ¶ 13.  The BitTorrent protocol utilizes cryptographic hash values to ensure each bit is properly routed amongst BitTorrent users as they engage in file sharing. *Id.* at ¶ 14.  The entirety of the digital media file also has a unique cryptographic hash value ... Once infringers complete downloading all bits which comprise a digital media file, the BitTorrent software uses the file hash to determine that the file is complete and accurate. *Id.* at ¶ 15.  IPP Limited downloaded from Defendant one or more bits of each file as listed in Exhibit A. IPP Limited further downloaded a full copy of each file hash from the BitTorrent file distribution network and confirmed through independent calculation that the file hash matched what is listed on Exhibit A. *Id.* at ¶ 19.  IPP Limited downloaded from Defendant one or more bits of each digital media file as identified by its hash value on Exhibit A. The most recent TCP/IP connection between IPP and the Defendant's IP address for each file hash listed in Exhibit A is included within the column labeled Hit Date UTC. *Id.* at ¶ 20.

11

Motion, docket #24-1 at 4-7.

There are two elements to a copyright infringement claim: "'(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1177 (10th Cir. 2009) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991)). The plaintiff bears the burden of proof on both elements. *Id.* (citing *Palladium Music, Inc. v. EatSleepMusic, Inc.,* 398 F.3d 1193, 1196 (10th Cir. 2005)).

Here, the Plaintiff alleges it owns the copyrights to each of the works (films) listed above, and provides the registration number, publication date and registration date for each such film. *See supra*; *see also* Exhibit B to Amended Complaint, docket #13-2. The Court takes Plaintiff's well-pleaded allegations as true.

For the second element, Plaintiff must prove that Kornmeyer "'unlawfully appropriated protected portions of the copyrighted work.'" *La Resolana Architects*, 555 F.3d at 1178 (quoting *Gates Rubber Co. v. Bando Chem. Indus., Ltd.,* 9 F.3d 823, 832 (10th Cir. 1993)). "This requires proving both: (1) that Kornmeyer, as a factual matter, copied portions of Plaintiff's work; and (2) that those elements of the work that were copied were 'protected expression and of such importance to the copied work that the appropriation is actionable.'" *Id.*; *see also Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 942 (10th Cir. 2002).

"A plaintiff can indirectly prove copying (in a factual sense) 'by establishing that a defendant had access to the copyrighted work and that there are probative similarities between the copyrighted material and the allegedly copied material.'" *La Resolana Architects*, 555 F.3d at 1178 (quoting *Country Kids 'N City Slicks, Inc. v. Sheen*, 77.F3d 1280, 1284 (10th Cir. 1996)).

"A plaintiff may meet the initial burden of establishing access 'by showing that the defendant had a reasonable opportunity to view or [an] opportunity to copy the allegedly infringed work.'" *Id.* (quoting *Autoskill Inc. v. Nat'l Educ. Support Sys., Inc.,* 994 F.2d 1476, 1490 (10th Cir. 1993)). "Thus, while a plaintiff is not required to demonstrate the defendant's actual access to the work, 'evidence that only creates a bare possibility that the defendant had access is not sufficient.'" *Id.* (quoting *Mag Jewelry Co. v. Cherokee, Inc.,* 496 F.3d 108, 117 (1st Cir. 2007)).

Once copying has been established, "'liability for copyright infringement will attach only where protected elements of a copyrighted work are copied.'" *Id.* at 1180 (quoting *Country Kids 'N City Slicks, Inc.,* 77 F.3d at 1284). "The plaintiff must prove that there is a "substantial similarity between those aspects of Plaintiff's [work] which are legally protectable and the Defendants' [work]." *Id.* Substantial similarity is measured by whether an "ordinary observer," who is not specifically looking for disparities, would tend to overlook any differences between the works. *Id.*

In this case, Plaintiff has sufficiently alleged that Kornmeyer copied its protected works by demonstrating, through verified testimony, that its investigator was able to download from Kornmeyer's IP address one or more bits of each of the digital movie files identified by file hashes, then downloaded a full copy of each file hash from the BitTorrent file distribution network (accessed by Kornmeyer) and confirmed through independent calculation that the file hash matched the Plaintiff's copyrighted works. Plaintiff's investigator then verified that the digital media file correlating to each file hash contained a copy of a movie which is identical, strikingly similar or substantially similar to the movie associated with that file hash. In fact, Plaintiff's investigator, Tobias Fieser, declares that he verified the similarity of the works by

"view[ing] each movie side-by-side with the corresponding digital movie file identified by its file hash value." Tobias Declaration, ¶ 20, docket #9-2. Taking these well-pled allegations as true, the Court finds that Plaintiff has established Defendant Kornmeyer copied Plaintiff's copyright protected works and recommends that the District Court find Kornmeyer has committed twenty-six (26) direct infringements of the Copyright Act against the Plaintiff.

**II.   Damages**

Here, Plaintiff seeks statutory damages and costs for the twenty-six (26) alleged copyright infringements during the period, January 2012- March 2013. Under federal copyright law, "the copyright owner may . . . recover . . . an award of statutory damages for all infringements involved in the action, with respect to any one work . . . a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). Damages may be increased to up to $150,000 if the infringement is willful. 17 U.S.C. § 504(c)(2).

In this case, Plaintiff seeks $58,500.00 ($2,250.00 per infringement) on the basis of its allegation of willful infringement. Plaintiff also seeks proportionate attorney's fees and costs, in the amount of $2,550.00 and $445.00[2] respectively. These are also authorized under the statute. *Id.* § 505. Finally, Plaintiff seeks injunctive relief to prevent any further violations by Kornmeyer, pursuant to 28 U.S.C. § 502 as follows:

> (A) Permanently enjoin Defendant and all other persons who are in active concert or participation with Defendant from continuing to infringe Plaintiff's copyrighted works;
>
> (B) Order that Defendant delete and permanently remove the digital media files

---

[2]Plaintiff's counsel attests in his declaration that Plaintiff seeks $2,995.00 in costs; however, he delineates costs only as follows: $350 for the filing fee and $95 for process service fees.

>> relating to Plaintiff's works from each of the computers under Defendant's possession, custody or control;
>
> (C) Order that Defendant delete and permanently remove the infringing copies of the works Defendant has on computers under Defendant's possession, custody or control.

Amended Complaint, docket #13 at 6-7. Notably, 17 U.S.C. § 503(b) provides that "the court may order the destruction ... of all copies ... found to have been made or used in violation of the copyright owner's exclusive rights."

This case is one of dozens filed in this District and handled by me as Magistrate Judge. It is also one of hundreds or perhaps thousands filed around the country in recent years by Plaintiff and other owners of pornographic films. Many of the defendants named in these lawsuits settle very early in the case. Some of those who do not settle have denied any participation in copyright infringement. Other defendants allege that their wireless connection may have been used by someone else to participate in the alleged swarm against Plaintiff's protected movies.

However, in this case, there is no evidence that anyone other than Kornmeyer committed the infringements, and evidence exists of his repeated infringements over a fourteen-month period. Despite being informed both before and during this litigation of the allegations against him, Kornmeyer has failed to answer or otherwise defend himself in this case. For these reasons, I believe that Plaintiff has established entitlement to willful infringement damages.

Furthermore, Plaintiff has established that Courts across the Country have awarded $2,250.00 per infringement in cases of this type, and I have awarded that amount in cases nearly identical to this one. Thus, I find that a statutory damage award of $2,250.00 per infringement is appropriate and just in this case to accomplish the intent set forth by Congress in passing the

Copyright Act. In addition, Plaintiff's request for $2,995.00 for attorney's fees and costs should be granted.

Finally, Plaintiff seeks injunctive relief prohibiting Defendant Kornmeyer from infringing Plaintiff's copyrighted works and requiring Defendant Kornmeyer to delete the torrent file relating to Plaintiff's movies from each computer in Defendant Kornmeyer's possession, custody or control, and to delete any actual copy of Plaintiff's copyrighted works from such computers. The Court finds that Plaintiff's requests for an order directing Kornmeyer to "delete and permanently remove the digital media files relating to Plaintiff's works" and to "delete and permanently remove the infringing copies of the works" from each of the computers under Kornmeyer's possession, custody or control are reasonable requests and should be granted.

However, the Plaintiff has failed to proffer evidence sufficient to justify its request to enjoin Kornmeyer "from continuing to infringe Plaintiff's copyrighted works"; Plaintiff has produced no evidence that, as of this date, Kornmeyer actually possesses the copyrighted works on his computer(s) and continues to upload them to others. Further, there is no evidence today that Kornmeyer has downloaded (copied) any other of the Plaintiff's copyrighted works since March 2013.

The Court notes that, if the District Court were to grant Plaintiff's requested injunction for the deletion of Plaintiff's copyrighted works on Kornmeyer's computer(s), Kornmeyer would be unable to "continue" uploading such works via the BitTorrent system. Therefore, the Court recommends that the District Court deny Plaintiff's request for an order enjoining Kornmeyer from "continuing" to infringe on the Plaintiff's copyrighted works.

## CONCLUSION

Based on the foregoing, and the entire record provided to the Court, I do respectfully RECOMMEND that the District Court **GRANT IN PART AND DENY IN PART** the Plaintiff's Motion for Entry of Default Judgment against Defendant Kornmeyer [filed September 24, 2013; docket #24] as follows:

1. Enter judgment in Plaintiff's favor against Defendant David Kornmeyer for direct copyright infringement of the Plaintiff's copyrighted works, as set forth in Count I of the Amended Complaint;

2. Order Defendant Kornmeyer to pay to Plaintiff the sum of $58,500.00 in statutory damages, as authorized by 17 U.S.C. § 504(c)(1), and $2,995.00 for attorney's fees and costs as authorized by 17 U.S.C. § 505;

3. Order Defendant Kornmeyer to permanently destroy all the digital media files relating to, and copies of, Plaintiff's copyrighted works made or used by him in violation of Plaintiff's exclusive rights, as well as all master copies in his possession, custody or control from which such copies may be reproduced; and

4. Deny Plaintiff's request to "[p]ermanently enjoin Defendant and all other persons who are in active concert or participation with Defendant from continuing to infringe Plaintiff's copyrighted works."

Dated at Denver, Colorado, this 22nd day of October, 2013.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge